All right, we'll hear from the Appellate's counsel. Mr. Sherman. Good morning, Your Honors. John Sherman for the Appellant George Hawkins. May it please the Court. Because voting is expressive conduct, the First Amendment forbids Governor Youngkin from choosing which voters, which disenfranchised Virginians may vote and which may not, based on a subjective, responsible citizen test. Throughout the course of this litigation, appellees have never argued, even in the alternative, that this subjective, responsible citizen test satisfies the demands of Shuttlesworth in which the Supreme Court required narrow, objective, and definite standards in such cases governing expressive conduct. Instead, appellees have argued, and the District Court agreed with them, that Mr. Hawkins and other similarly situated disenfranchised Virginians cannot even invoke the First Amendment on Federal Discretion Doctrine because at present they lack the statutory entitlement or qualification to vote as a matter of Virginia law. Can I ask you a question just about doing this case under the First Amendment? The Due Process Clause, Vagueness Doctrine, and we were just talking about this, sort of similarly requires that there be standards to avoid arbitrariness in enforcement of the standard. And yet the Supreme Court has said when it comes to clemency, you don't have to, it's fine. It's not unconstitutional under the 14th Amendment, Vagueness Doctrine, to have an executive exercising completely unfettered discretion. And so why, it just seems like the Court has already held that it's going to make an exception to rules that ordinarily require clear standards to avoid arbitrariness in execution. It's making an exception when it comes to clemency. Why doesn't that doctrine apply here? So in the due process cases, Woodard and Dumchat, we see the Supreme Court as expressing that, creating that exception or deferring to executive clemency, because the defendants in those cases or the convicted parties in those cases, they were seeking judicial second-guessing of a determination of their clemency in those cases. They were saying there should be standards and we should get a reason if it's going to be denied. And the Court said, no, that's like normal cases, but clemency is different. Correct, Your Honor. So in those circumstances, one, we see, we're not asking for judicial second-guessing of individual determinations. Here, we see a categorical facial First Amendment violation for this arbitrary system of selecting which people can vote and who cannot. The First Amendment is stronger medicine. Before the cases that we've brought in Florida, Kentucky, and Virginia, the First Amendment on federal discretion doctrine has not been considered in the voting rights restoration context. And the First Amendment doctrine that we're invoking is 86 years old. It has applied to a wide variety of expressive conduct. And in this case, it should apply to the context of the expressive conduct that is voting. Essentially, the district court and appellees have stated that the First Amendment prohibits arbitrary determinations as to the time, place, and manner of expressive conduct, but does not prohibit arbitrary determinations as to who may even engage in that form of expressive conduct. And that distinction that appellees and the district court have advanced, that distinction is untenable. It's simply contrary to city of Lakewood, and that's the key landmark case here for the court to apply. City of Lakewood says the danger of viewpoint discrimination is, quote, at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official. So the court is not just concerned with an arbitrary allocation of a time slot or a place or a manner. It's concerned with arbitrary determinations as to who may have voice in our society, who may express themselves. And Your Honor is correct, I mean, that there are due process cases on clemency, but there's no case prior to these three that have been decided. There was a stay order in hand to one decision with a dissent by Judge Martin. There was the law stutter case in the 11th Circuit, and now there's this case. But there's not been another set of cases that have considered the interaction of the First Amendment doctrine here and clemency. The key dispositive question, the question that we think should be dispositive, is whether voting is expressive conduct. Appellees have shied away from this question. But at the end of the day, your argument rests, you see, on the First Amendment. Correct, Your Honor. It's not the 14th Amendment, and it is the unfettered basis upon which you rely. Correct, Your Honor. The 14th, we don't raise any due process argument or any equal protection argument under the 14th Amendment. We're relying on the First Amendment, and the First Amendment interest here is in voting. Voting has been determined by the Supreme Court in the course of numerous ballot access cases construing political parties' and candidates' interest under the First Amendment. They have said repeatedly that voters have a First Amendment interest in expressing their political preferences through the ballot. Norman V. Reed from the 90s and in Illinois State Board of Elections versus Socialist Workers Party, they used this language, expressed the political preferences. Voting is conduct. It's clearly expressive under those preferences, and it's political. And we've included a long litany of all of the other forms of political expression and expressive conduct circling around and informing that central act in our electoral system, voting. And all of them have been found protected by the First Amendment. So we've discussed at least the facial similarities that I think you deal with with the felony reenfranchisement process and the licensing and permitting scheme. Excuse me, Your Honor. In terms of whether there is a comparison of pardons, for instance, in licenses that are here. Correct, Your Honor. So we think the district court simply erred in its functional analysis here. Licensing by any definition is granting permission to act. Black's Law Dictionary is just one of many dictionary definitions. It says it's a permission accorded by a competent authority conferring the right to do some act without which such authorization would be illegal. There is no definition of license or licensing that restricts it to time, place, and manner regulation. Licensing means granting permission to act, and that is effectively what is going on here in the voting rights restoration system in Virginia. Looking too narrowly at whether a license is simply about time, place, and manner, many of the cases decided by the Supreme Court do concern, I will acknowledge, do concern issuing a time, place, and manner specification for a demonstration or a meeting in a park. But in this case, looking at it functionally, which the Supreme Court has mandated that the courts take a functional view and a functional perspective, what is happening is the court is arbitrarily, excuse me, the governor is arbitrarily selecting who may vote and who may not, who may engage in a form of expressive conduct and who may not, who can have that permission and who cannot based on a responsible citizen test. And that subjective standard violates Shuttlesworth. So one difference, it seems to me, is that at least in some of these cases, the First Amendment cases involving sort of traditional open public fora, it would not, the city could not say, like, look, you don't like my permitting scheme, fine, no permits at all, nobody gets to protest in the park. But is there any reason why if you win this case, could Governor Youngkin just say, like, fine, I'm done with restoring rights, I don't have to do it and I just won't? Well, Your Honor, I think that in many of these cases, the court, the licensor, the state legislature could withdraw a particular form of expressive conduct. Yeah, I guess I'm really just, I wanted to give you both the reason I have the question and then the question, which is, is there any reason, I just don't know, this is a Virginia law question, is the governor required to restore somebody's rights or can the governor just say, I'm getting out of this business? Understood, Your Honor. And the governor could withdraw all voting rights restoration. Virginia law permits in the discretion to completely withdraw all voting rights restoration and permanently disenfranchise all people with felony convictions. But if the governor creates an exception to that default rule of permanent disenfranchisement, then it cannot be arbitrarily given. That's the crucial difference. And in many circumstances, we just don't think that that's a risk here, right? Throughout the course of the litigation in Florida, for instance, the same thing was implicitly threatened, to try to deter the court from ruling in our favor, but when it came time, when the district court actually issued an injunction in our favor, they came up with objective rules and criteria to govern the system. Just to be clear, I certainly didn't mean it as a threat. I just have a question about Virginia law because it does seem to provide, there's at least one reference in the law to this kind of system, but I was just wondering whether it was mandatory or not. Understood, Your Honor. I do want to make four quick points about the expressive conduct question because I think this is the key dispositive question here that puts us under the First Amendment unfettered discretion doctrine. Appellees have tried to argue that this court should just bypass this question. They would like for this court to look inside the First Amendment, find no guarantee for people with felony convictions to vote, and rule against us. But that's not really the question under this line of First Amendment cases. The dispositive question is, is this expressive conduct or not? And they don't really argue anywhere in their brief that voting is not expressive conduct. The closest they come is saying that voting is a distinct right, and the district court for its part says that Mr. Hawkins has no, quote, underlying right. But both of these phrases just beg the question of whether voting is expressive conduct. We've referenced the earlier— We have some cases. I thought the state did call our attention to some Fourth Circuit cases saying, well, if voting is a First Amendment right, you don't get anything more than you get under the 14th and 15th Amendment. We're not recognizing a First Amendment right that goes beyond 14th and 15th Amendment protections. So the Washington v. Finley line of cases that Your Honor is referencing, they simply could not be extended by Irby and Republican Party of North Carolina v. Martin because holdings are, of course, confined to the facts of their cases. In Irby, that concerned an appointive system for school board members. In Virginia, nobody's voting in an appointive system, so nobody's vote can be denied. In Republican Party of North Carolina v. Martin, that was a gerrymander claim. That's a classic vote dilution claim. So there simply were no vote denial claims in those other two cases that they point to. So, yes, there was this repetition of the broadest language without that limiting prefatory language from Washington v. Finley. But in Washington v. Finley, the origin of this line of cases, that was limited to vote dilution. It clearly said it does not apply where there is some device that limits participation in the franchise. Here there is a device that limits participation in the franchise. It's felony disenfranchisement. Quickly, just back on the- Speak to the 6th Circuit and 11th Circuit cases that have addressed this question. Yes, Your Honor. So in the 11th Circuit, it's a stay order. There was a dissent from that stay order on the First Amendment basis. And the court, the majority of that motions panel, simply never reached the specific question that's raised here. It was an initial review of the case, and they said this line of First Amendment cases seems not to apply. I don't understand in what sense they didn't reach it, right? They said this is a clemency case, and in those cases have nothing to do with clemency. And we have clear guidance from the Supreme Court that when it comes to clemency, unfettered discretion is fine. So, I mean, I think they reached and rejected your argument. I would argue that they simply, Your Honor, that they didn't reach the specific question of whether or not there's an underlying- a need for an underlying constitutional right, whether voting is expressive conduct, all of the sort of sub-issues and sub-questions that have been debated in this case. It was an initial reach of, broadly, does this doctrine apply? But there wasn't much analysis or much explanation there. The court did not go on to say, if it applies, how would that play out? It just said, in this clemency context, that line of cases does not apply. Appears not to apply on the first gloss. Merits panel gets the case. We argued it. It became moot before any merits decision could issue. As to the- You do make the point voting is a right, expressive conduct. But specifically to felons, aren't they in a different category? I mean, there is no fundamental right to vote on the part of a felon in our law. So doesn't that put them in maybe a sui generis-type category that's different than when you do have a right? They are different in the sense that they are ineligible, but they're no different from other categories of ineligible citizens, like 16- and 17-year-olds. And what we've argued throughout this case is that when expressive conduct is at stake in a particular de facto licensing scheme, as we have here- I want to make sure I understand that, because 16, 17-year-olds, you're not talking about a restoration of a right or a right that they have at all because of the age situation. Here, it is the felon's status that renders them, at least in terms of the law, they're just not- there's no fundamental right for a felon to vote. Is that correct? There's no fundamental constitutional right for them to vote. And I just wanted to note, Your Honor, my time has- Your time is fine. Okay. But that goes to the point. At least I'm trying to understand your point in terms of when you seek to import them into that particular category. Aren't they in a different category altogether? As far as state statutory qualifications to vote, they are in a different category because they have been disenfranchised by state law. As far as the separate inquiry as to where the First Amendment doctrine and issue here applies, we believe it applies wherever political expressive conduct is at stake. In this case, there is this- Let me just let you stop you there and you can come back. Okay. You've got a good- Thank you, Your Honor. piece of time to come back on rebuttal and we'll look forward to hearing from you. Thank you, Your Honor. We'll hear from Ms. Malley. Good morning, Your Honors, and may it please the Court, Erica Malley on behalf of Governor Yunkin and Secretary Gee. The district court correctly held that the First Amendment unfettered discretion doctrine does not apply here. Two other circuits have rejected this same claim, and there's no reason to create a circuit split. The unfettered discretion doctrine applies in narrow circumstances. I wonder why the Sixth Circuit didn't publish its opinion in this. It seems like it was a pretty important opinion. I'm not sure, Your Honor. It still would be a circuit split in that they explained the basis of their decision. It concerned a highly similar claim to the claim at stake here, and the Sixth Circuit rejected it. I just point that out because, you know, when it's unpublished, it's not even binding on its own circuit. That's true. You know, so then for us to then look at it as persuasion, it looks like to me, I'm not sure what that means. But, you know, you've got your various reasons for going unpublished. I'm not challenging it. I'm just saying the effect on how we look at it is different, I think, than the way we look at the Eleventh Circuit case, which had a dissenting opinion in it. So it was a two-to-one case and wasn't as cut and dry as we would like to have opinions come from other circuits, where when we get unanimous opinions, we like to look at them. We're probably a little bit more persuaded when we get them going both ways on it. Right. There are two circuit opinions. The Eleventh Circuit opinion, as you noted, is a published opinion. Both of them explain their reasoning at length for finding that the unfettered discretion doctrine doesn't apply to discretionary felon reenfranchisement systems, and it's ultimately based on Supreme Court authority in this area. While that doesn't control this question directly, as Judge Harris's questions noted, the Supreme Court has looked at a very similar challenge under the Due Process Clause, to say it was a due process violation to have a felon discretionary clemency system for felons that provided no standards, no rationales, and there is no requirement for that in clemency systems, because of the unique role of clemency systems in the constitutional system. They're essentially a check on potential harshness in legal processes, and for that reason typically haven't been subjected to judicial review, and have been left instead to the authority of the executive branch. When you said typically haven't been subjected to judicial review, that reminded me, I wanted to ask, are you making a political question, sort of jurisdictional argument in this case? Sort of at the very end of your brief, you say, oh, and anyway, this whole thing is a political question. We're not saying that the court can't reach the merits of the challenge. That argument goes more towards the grave difficulties that would arise if the court were to accept our friend's view, and try and impose some type of injunction on the governor to run a clemency process in a certain way, given the lack of any cases that have developed any judicial standards for how to review a clemency process, and instead the courts have left open, is it reviewable in some circumstances, but said at any rate, it would have to be unique and rare circumstances for judicial review of a clemency system. Can I ask you a question about this sort of threshold question that your colleague is raising, about whether voting is protected First Amendment expressive activity? I think in your brief you say it's not. Is that right? I think it's not. I don't think there's any need for the court to ultimately I know, but I'm just interested in the state's position on that. Yes. Can you explain to me why it would make sense to say that giving money to a candidate is First Amendment protected expressive activity, but giving your vote is not? Ultimately, the reason that the right to vote in and of itself isn't a First Amendment right is because it's more directly addressed and secured by other provisions of the Constitution. But I guess I was asking just, I guess, I think a slightly different question, which is why isn't it the kind of expressive activity that we would protect under the First Amendment? Your argument is just if it's specifically protected under another amendment, it can't come in under the First Amendment? Well, the courts have never quite resolved this question. I think it's more simply resolved on two grounds, one being this court's line of cases, including Irby, saying if there's First Amendment protection of the right to vote, it doesn't extend beyond the protections of the 14th Amendment, and the line of cases establishing that whatever the nature of a federal constitutional right to vote, it's not a right that's held by felons. But ultimately, I do think the reason would be not that voting couldn't be said to be expressive in some sense, but that it's more directly addressed and controlled by other constitutional amendments. So just as a jury trial certainly involves speech and expressive conduct, yet when the court is looking at challenges to jury trials, they aren't governed by First Amendment doctrines because there are other parts of the Constitution that directly control jury trials. So I want to, on this, the Beecham case, Supreme Court case, if it applies here, and of course it's procurement, would that foreclose their First Amendment if we were to find that, would that foreclose their First Amendment argument if the 14th Amendment? I'm not sure it would directly, that Beecham directly forecloses, given that it's a summary affirmance and didn't involve precisely this First Amendment claim. I think it's certainly, like Dumbshot and Woodard, instructive in that it was a very similar claim that standardless felon reenfranchisement was unconstitutional. And the Supreme Court did reject that. But I believe the precise basis of that was the Equal Protection and Due Process Clause in Beecham. Still, the 11th Circuit, for instance, in hand, looked to Beecham as well as cases like Dumbshot and found that instructive in holding that there isn't a federal constitutional requirement that felon reenfranchisement be governed by specific objective standards. And I'd also like to respond briefly to your question to my friend on the other side, Judge Harris, about whether the governor is required to have a felon reenfranchisement system. And he is not by the Virginia Constitution. It's something the governor and the secretary believe strongly in, affording second chances to felons who've turned their lives around and become productive citizens. But there's no state legal requirement that he reenfranchise any felons. And in fact, it could be extremely difficult, given the state constraints on the clemency power. The Virginia Supreme Court has held that the Virginia constitutional clemency power must be exercised on an individualized basis. And it could be very difficult to design a system that would satisfy both that state requirement and the unfettered. But you would agree, I suppose, that the Supreme Court seems to suggest there's still some minimal procedural safeguards. I mean, Justice O'Connor, if she'd already retired and wrote this concurrence, I'll say it about designation. I don't know how it happened. But anyway, she basically used an example where you don't think the governor could just say, we'll flip a coin and do it. The Supreme Court has never actually directly answered that question. That was a concurrence. The plurality seemed to suggest that might not be reviewable. I'm certainly not asking the court to reach that far. I think the court could assume, for purposes of this case, that in some instances, executive clemency decisions could be reviewable. I thought there were five justices on that. The Supreme Court had agreed with her when she said that. There was no majority in that case. And there was a plurality that could at least be read to suggest. But it does seem logical. You couldn't have a procedure where the governor would say, well, we're going to do it by flipping a coin. That would certainly present very different issues for this court, if there were claims that it was arbitrary. I thought in your brief, now I can't remember, but I thought in your brief, you said that if it turned out the governor was re-enfranchising Republicans but not Democrats, that would be a problem. That would be a problem. The governor does not contend that he has the constitutional authority to intentionally discriminate against anyone based on a protected characteristic. So what's at stake here, as I understand it, is whether the plaintiff is going to have to prove you had this standardless discretion and the way you employed it was discriminatory, or whether they get the benefit of the prophylactic rule from the licensing cases that it's so hard to prove we're just going to have a prophylactic rule, you can't have that kind of discretion. Yes, the plaintiff's claim in this case depends solely on the contention that this prophylactic rule applies. They haven't proven or attempted to prove that there's any actual discrimination. But everyone agrees if they could prove that, the governor can't then point to the clemency cases and say, oh, I'm allowed to do that. I think at least it would present very different questions that would be much more difficult for the governor to defend, and the governor is not saying that it would be constitutional for him to do so. At that point, I think it would be necessary for the court to determine in what circumstances and under what tests can the court review a clemency program. But for this case, the only question is does the unfettered discretion doctrine apply, and the district court correctly held that it does not. And so if the court has no further questions, we respectfully request that the judgment be affirmed. Thank you, Your Honor. First, I'd say I think we've heard from the appellees a concession that First Amendment viewpoint discrimination claims could be available to rights restoration applicants if they could be proven. And that city of Lakewood and the unfettered discretion doctrine is just one step back from that. This is essentially conceded right here that there is expressive conduct at stake and on the line. It's just that only intentional viewpoint discrimination would be barred, but we could not apply the unfettered discretion doctrine. That distinction just doesn't make sense. See, I think it does make sense because the Supreme Court has said in so many times clemency is different. The costs of the prophylactic rule would not be worth it in this context because we understand that when it comes to clemency, we are asking people to exercise what is inherently subjective authority. You have to make a predictive guess about how this is going to turn out. And I just think that there may be a very sensible reason why you would end up with a rule that says it doesn't mean you can discriminate based on viewpoint or based on partisan affiliation or race or anything like that, but the costs of the prophylactic rule are just too high in this context. Well, the Supreme Court has never considered the implications, the First Amendment implications of an executive clemency regime. So this court will be writing on a relatively blank slate. There are only the decisions that we've talked about prior to this. Beecham is not a First Amendment case. It's just a 14th Amendment equal protection case. All of the judges in the state order in hand, all three of them agreed that that was foreclosed to us. We did not bring an equal protection claim here. People with felony convictions have a First Amendment right to political expression. They just do not have under state law, because they're disenfranchised, they don't have the statutory right to this form of expressive conduct. That's no bar, though, to the unfettered discretion doctrine, because as we've shown with the vanity license plate cases and this court's decision in Child Evangelism of Maryland, Fellowship of Maryland, you could ban, as a matter of state law, you could totally withdraw all private access to those fora, the vanity license plate, or the take-home flyer forum in Child Evangelism without raising any First Amendment concern. But if you make that forum available, then it cannot be arbitrarily allocated, arbitrarily licensed. I would point the court, too, also just to the long line of cases from the Supreme Court where it is held voting is the most fundamental right we have as Americans, and I think that should be dispositive here. That is the reason why any system, even an executive clemency system, should not be able to exercise arbitrary power over that fundamental right. If you look at the case we cited in which the Supreme Court struck down Ohio's ban on anonymous pamphlets, anonymous political literature, McIntyre v. Ohio Election Commission, 1995, we referenced, we cited this quote from, they cite the long, quote, respected tradition of anonymity in the advocacy of political causes, end quote. The very next line in that decision is, this tradition is perhaps best exemplified by the secret ballot. The right to vote is the most fundamental right we hold as American citizens, and that is why even if historically the court has deferred to the judgment and the sort of holistic assessment of executives in clemency regimes when it comes to individualized determinations as to whether they should have a commutation of their sentence or any of the other restoration, any of the other forms of clemency, pardons, et cetera, that is why even here there should be an exception for voting rights restoration because of the First Amendment interest here. I point the court also to Doe v. Reed. Doe v. Reed is another case in which the court recognized that the legal effect of expressive conduct doesn't have any impact on the expressive nature of that conduct. Justice Scalia in dissent in that case, even in dissent, said that there is a First Amendment interest in voting. The fundamental nature of the First Amendment interest in voting means that we're not trying to invade or disrupt the executive clemency regime as a whole. This is one exception, one narrow exception created by the confluence of the discretion normally afforded to executives in clemency and the extremely strong 86-year-old doctrine, First Amendment doctrine, the unfettered discretion doctrine. With that, if there are any other questions Your Honors may have for me, I'll conclude with that. Thank you very much. Thank you, Your Honor. We will come down. We will greet counsel. Thank you. We will proceed to the final case after greeting counsel.
judges: James Andrew Wynn, Pamela A. Harris, DeAndrea Gist Benjamin